DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Bowling Green Municipal Court which, following a trial to the court, entered judgment for appellee, Calvin Earl, in this replevin action and awarded attorney fees. For the reasons stated herein, this court affirms, in part, and reverses, in part, the judgment of the trial court.
The following facts are relevant to this appeal. On April 30, 2001, Earl filed a complaint sounding in conversion against appellants, Wood County Humane Society ("Humane Society") and Renee Valtin, the shelter manager of the Humane Society, seeking the return of his female coon hound puppy. The case proceeded to trial on October 4, 2001. On October 18, 2001, the trial court entered judgment for Earl, ordering the return of his coon hound puppy and awarding Earl $1,648 in attorney fees. Appellants filed a timely notice of appeal.
Appellants set forth the following three assignments of error:
 "1. THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WAS AN INVALID CONVEYANCE OF THE DOG.
 "2. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE DOG WAS NOT NEGLECTED FOR PURPOSES OF R.C. 959.13 OR R.C. 1717.13.
 "3. THE TRIAL COURT ERRED WHEN IT AWARDED ATTORNEY FEES AS DAMAGES."
In considering appellants' first and second assignments of error and arguments in support thereof, this court reviewed the record of this cause, the relevant statutory and case law and applied this law. After doing so, we conclude that the well-reasoned opinion and judgment entry of the Honorable Mark B. Reddin properly determines and correctly disposes of the material issues raised in the first and second assignments of error. We therefore adopt the judgment of the trial court as our own. See Appendix A. Accordingly, appellants' first and second assignments of error are found not well-taken.
In their third assignment of error, appellants argue that the trial court erred when it awarded attorney fees as damages. This court finds merit in this assignment of error.
In their answer to Earl's complaint, appellants set forth defenses including that the Humane Society was immune from liability pursuant to R.C. 2744.03(A)(1), (2), (3) and (5)[1] and that Valtin was immune from liability pursuant to R.C. 2744.03(A)(6).[2]
This court agrees with the conclusion reached by the Third District Court of Appeals in Studer v. Seneca County Humane Society (May 4, 2000), Seneca App. No. 13-99-59. In Studer, the court concluded that a county humane society is a political subdivision for purposes of the immunity statutes.[3] The court continued its analysis and stated:
"Having concluded that Appellees are political subdivisions, we must now consider whether the trial court properly found that they were entitled to the benefit of the immunity statutes. R.C. Chapter 2744 sets forth a three-tier analysis. The first tier, R.C. 2744.02(A), vests political subdivisions with `blanket immunity from tort liability arising out of an act or omission by the entity or its agent if the act or omission occurs in the course of a "governmental" or "proprietary" function.' Armbruster v. W. Unity Police Dept. (1998), 127 Ohio App.3d 478, 483."
The court then proceeded to the second tier, R.C. 2744.02(B), which enumerates five exceptions to the general grant of immunity contained in R.C. 2744.02(A). The Studer court concluded that only one of the five exceptions could be applicable in that case: R.C. 2744.02(B)(2), an exception for the negligent performance with respect to proprietary functions.[4] After examining the definitions of a "governmental function" contained in R.C. 2744.01(C)(1)[5] and R.C.2744.01(C)(2)(i)[6], the Studer court concluded that the functions of the humane societies were governmental in that the humane societies were either acting for the common good or were on the plaintiff's property for the primary purpose of enforcing the laws regarding cruelty to animals. Therefore, because a governmental function cannot be considered a proprietary function, see R.C. 2744.01(G)[7], the exceptions to immunity did not apply.
The final tier of analysis is R.C. 2744.03 which provides further defenses and immunities a political subdivision may assert. However, R.C. 2744.03 is only applicable in the event that the entity is subject to liability under one of the five exceptions contained in R.C. 2744.02(B).Armbruster v. W. Unity Police Dept. (1998), 127 Ohio App.3d 478, 483. As the Studer court concluded that the humane societies were not subject to liability under one of the five exceptions contained in R.C. 2744.02(B), R.C. 2744.03 was not applicable.
In a conversion action, attorney fees incurred in recovering possession of one's property is a proper item of special damages. Fulks v. Fulks
(1953), 95 Ohio App. 515, 520. However, applying the above analysis to the case sub judice, this court concludes that appellants are immune from tort liability under R.C. Chapter 2744. Because appellants are immune from tort liability under R.C. Chapter 2744, attorney fees, a proper item of special damages in a conversion action, Id., cannot be awarded. Therefore, the trial court erred in awarding attorney fees.
Accordingly, appellants' third assignment of error is found well-taken. The judgment of the Bowling Green Municipal Court is affirmed, in part, and reversed, in part. Pursuant to App.R. 12 (B), we hereby enter the judgment the trial court should have entered, and vacate the October 18, 2001, judgment of the trial court awarding appellee attorney fees in the amount of $1,648. Appellants are ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] {¶ a} R.C. 2744.03(A)(1), (2), (3) and (5) provide:
 {¶ b} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability;
 {¶ c} "(1) The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.
 {¶ d} "(2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.
 {¶ e} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
{¶ f} "* * *
 {¶ g} "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
[2] {¶ a} R.C. 2744.03(A)(6) provides:
 {¶ b} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ c} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ d} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ e} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code."
[3] In Studer, the plaintiff had brought her action against two humane societies.
[4] {¶ a} R.C. 2744.02(B)(2) states:
 {¶ b} "(2) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
[5] {¶ a} R.C. 2744.01(C)(1) states that a "governmental function" is one that satisfies any of the following:
 {¶ b} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement.
 {¶ c} "(b) A function that is for the common good of all citizens of the state;
 {¶ d} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."
[6] R.C. 2744.01(C)(2)(i) provides that the enforcement or nonperformance of any law is a governmental function.
[7] {¶ a} R.C. 2744.01(G) provides:
 {¶ b} "(G)(1) `Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 {¶ c} "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 {¶ d} "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.
 {¶ e} "(2) A `proprietary function' includes, but is not limited to, the following:
 {¶ f} "(a) The operation of a hospital by one or more political subdivisions;
 {¶ g} "(b) The design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery;
 {¶ h} "(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;
 {¶ i} "(d) The maintenance, destruction, operation, and upkeep of a sewer system;
 {¶ j} "(e) The operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility."